**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**(SOUTHERN DIVISION)**

| | | |
|---|---|---|
| **BRIAN BROOKS, SR.** | * | |
| **Plaintiff** | * | |
| **v.** | * | **Case No. 8:20-CV-03414-AAQ** |
| **BOARD OF EDUCATION FOR** | * | |
| **PRINCE GEORGE'S COUNTY** | | |
| **PUBLIC SCHOOLS, ET AL.** | * | |
| **Defendants** | * | |

**MEMORANDUM OPINION**

This is a case concerning the alleged unlawful termination of a high-school basketball coach and teacher.  Plaintiff Brian Brooks, Sr., alleges that the Prince George's County Public Schools Board of Education (PGPS), Dr. Gorman Brown – the principal of CH Flowers High School in Prince George's County, MD – and Mr. Raynah Adams – the principal of Friendly High School in Prince George's County – unlawfully terminated, retaliated, and discriminated against him on the basis of his age.  Plaintiff additionally alleges that Defendants' conduct breached a contract between the parties and intentionally inflicted upon him extreme emotional distress.  Pending before the Court is Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint.  ECF No. 50.  For the reasons discussed below, Defendants' Motion shall be denied in part and granted in part.

**BACKGROUND**

According to Plaintiff's Second Amended Complaint, ECF No. 49, Prince George's County Public Schools (PGPS) has employed Plaintiff Brian Brooks, Sr., in various capacities

since 1997.  *Id.* at ¶ 11.  From 2013 to 2016, Plaintiff was employed at Friendly High School in Prince George's County.  *Id.* at ¶ 7.  From 2016 to 2020, Plaintiff was employed as a teacher and coach at CH Flowers High School, also in Prince George's County.  *Id.* at ¶ 6.  Plaintiff's coaching responsibilities included serving as the basketball coach of both the Varsity and Junior Varsity teams.  *Id.* at ¶ 12.  His four-year tenure at the school overlapped with his son's four years there as a student.  *Id.* at ¶ 9.  Plaintiff's son played on the Junior Varsity basketball team coached by his father.  *Id.* at ¶ 13.

On or about January 31, 2020, Plaintiff was coaching his son's junior varsity basketball team in a game at Laurel High School.  *Id.* at ¶ 14-15.  According to Plaintiff's allegations, in response to "provocation from the stands and others," Plaintiff's son threw a punch and an altercation followed.  *Id.* at ¶ 17.  Dr. Brown, who was allegedly present for the altercation, instructed Plaintiff's son not to apologize and yelled that Plaintiff and his son were "done."  *Id.* at ¶ 18-19.  Plaintiff alleges that other younger coaches were also present at the game.  *Id.* at ¶ 20, 48.

As a result of the incident, Plaintiff's son was suspended from school from February 3, 2020 to February 7, 2020, as well as from his team's next five basketball games.  *Id.* at ¶ 23-24.  Additionally, on February 14, 2020, school security officials took Plaintiff's son from his class, escorted him to the security office, searched him for drug paraphernalia and other related contraband, and questioned him for over an hour.  *Id.* at ¶ 27-30.  At no point did security officials contact his parents.  *Id.* at ¶ 31.

Dr. Brown also asked a school "security resource officer" to inform police officials regarding Plaintiff's son's actions at the basketball game.  *Id.* at ¶ 21.  As a result, criminal proceedings were initiated against Plaintiff's son.  *Id.*  On February 18, Plaintiff's son received

notice of two charges against him arising out of the January 31, 2020 incident. *Id.* at ¶ 33. Plaintiff's son, ultimately, agreed to enter a diversion program pursuant to which criminal prosecution against him would be deferred if he completed 100 hours of community service. *Id.* at ¶ 22.

Meanwhile, Plaintiff also faced sanctions for his conduct arising out of the January 31st altercation. On February 5, 2020, Plaintiff received a letter notifying him that, effective February 3, 2020, he had been suspended for three basketball games. *Id.* at ¶ 26.

According to Plaintiff, this was not the first occasion on which Dr. Brown and Mr. Adams had taken action against him. Between the fall of 2019 and the spring of 2020, they would routinely pass by Plaintiff's classroom, which created a sense of fear in Plaintiff. *Id.* at ¶ 35. Together, these incidents allegedly began to take a toll on Plaintiff's physical and mental condition. In the spring of 2020, Plaintiff, as well as his son, began seeing a therapist as a result of the actions of Dr. Brown and Mr. Adams. *Id.* at ¶ 42. Likewise, in the summer of 2020, as a result of stress induced by Defendants' actions, Plaintiff began seeing a chiropractor for physical pains. *Id.* at ¶ 43.

Mr. Adams also took unspecified actions to create "a hostile and emotionally distressing work place" while Plaintiff was employed at Friendly High School between 2013 and 2016. *Id.* at ¶ 7-8. The Complaint is silent as to exactly what Mr. Adams did. Regardless, Plaintiff alleges that Dr. Brown encouraged and facilitated Mr. Adams' actions against Plaintiff. According to Plaintiff, Dr. Brown and Mr. Adams are fraternity brothers. *Id.* at ¶ 36. As a result of the unspecified actions of Mr. Adams, encouraged by Dr. Brown, Plaintiff alleges that, in January 2018, Plaintiff developed Type II Diabetes. *Id.* at ¶ 39. Importantly, according to the Complaint, the diagnosis occurred more than a year before the January 31, 2020 incident – before Defendants

punished Plaintiff and his son, and before Dr. Brown and Mr. Adams began closely monitoring his classes.

On June 17, 2020, Plaintiff provided the Human Resources Department at CH Flowers a cease and desist letter. *Id.* at ¶ 44. On June 24, 2020, Dr. Brown gave Plaintiff an unsatisfactory performance review. *Id.* at ¶ 45. On June 26, 2020, Plaintiff was terminated from his position as coach of the CH Flowers' JV and Varsity basketball teams. At the time of his termination, Plaintiff was 53 years old. *Id.* at ¶ 47. Plaintiff alleges other coaches who were between the ages of 30 and 40 were not punished as severely. *Id.* at ¶ 20, 48. However, on September 16, 2020, Plaintiff was rehired as the coach of CH Flowers' JV and Varsity basketball teams. *Id.* at ¶ 49.

On November 23, 2020, Plaintiff filed suit in this Court raising counts of wrongful termination (Count I), breach of contract (Count II), discrimination on the basis of age (Count III), retaliation (Count IV), and intentional infliction of emotional distress (Count V). As relief, Plaintiff sought a declaration that Defendants had committed the violations named in each of the counts, appropriate compensatory and punitive damages, and attorney's fees and costs arising out of the litigation of the case. ECF No. 1. On December 31, 2020, Defendant PGPS answered the Complaint. ECF No. 7. On April 7, 2021, Mr. Adams informed the Court that he intended to file a Motion to Dismiss Count V of the Complaint, which alleged intentional infliction of emotional distress. ECF No. 15. On May 27, 2021, Plaintiff filed an Amended Complaint, which dropped all claims against CH Flowers High School, but proceeded with the same claims against the other Defendants. ECF No. 27-1. On July 15, 2021, PGPS filed a second Motion to Dismiss. ECF No. 30. On February 23, 2022, the Court granted Plaintiff leave to file a Second Amended Complaint, stating that in "the event Defendants file a renewed motion to dismiss, to the extent the Court grants any portion of said motion on the same grounds as raised in the original motion, the granting

of the motion will be with prejudice.  Plaintiff has been given ample opportunity to consider the

basis of Defendants' motion."  ECF No. 46.  On March 25, 2022, Plaintiff filed a Second Amended

Complaint.  ECF No. 49.  As the Court anticipated, on April 8, 2022, Defendants again moved to

dismiss Plaintiff's Second Amended Complaint.  ECF No. 50.  On April 29, 2022, this case was

transferred to my chambers for all further proceedings.

## STANDARD OF REVIEW

Fed. R. Civ. P. 12(b)(6) provides that a party may move to dismiss where there is "failure

to state a claim upon which relief can be granted."  To survive a motion to dismiss under 12(b)(6),

a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

For the purposes of a motion to dismiss, the Court should accept as true the well-pleaded

allegations of the complaint.  *Byrd v. Gate Petroleum Co.*, 845 F.2d 86, 87 (4th Cir. 1988).  The

court should construe all factual allegations in the light most favorable to the plaintiff, *Albright v.

Oliver*, 510 U.S. 266, 268 (1994), and "draw all reasonable inferences in favor of the plaintiff."

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

Ultimately, a complaint "need only give the defendant fair notice of what the claim is and the

grounds upon which it rests."  *Coleman v. Md. Ct. of Apps.*, 626 F.3d 187, 190 (4th Cir. 2010)

(internal quotation marks omitted).

## ANALYSIS

Although Defendants challenge each of Plaintiff's claims, two basic premises underlie the

majority of their arguments.  First, Defendants argue that because Plaintiff does not specifically

allege that he suffered a loss in pay or was prevented from performing the responsibilities of his

position, he was not, in fact, terminated – despite his explicit allegation to the contrary.  Second,

similar to their first argument, Defendants repeatedly ask the Court, at the motion to dismiss stage, to not only construe the facts in favor of Defendants but also resolve disputes of fact in their favor. Neither of these arguments are well-taken.  However, Defendants correctly argue that Plaintiff has failed to properly plead a claim for intentional infliction of emotional distress.

## I.  Wrongful Termination

An employee may bring a cause of action for wrongful termination against an employer "when the motivation for the discharge contravenes some clear mandate of public policy."  *Adler v. American Standard Corp.*, 432 A.2d 464, 473, 291 Md. 31, 47 (1981).  To establish a wrongful discharge claim, the plaintiff employee must show that: (1) he was discharged; (2) the basis for his discharge violated a clear mandate of public policy; and (3) there was a nexus between his conduct and the employer's decision to fire him.  *Wholey v. Sears Roebuck*, 803 A.2d 482, 489, 370 Md. 38, 50-51 (2002).  Maryland has recognized a cause of action for abusive discharge for both at will and contractual employees.  *See Ewing v. Koppers Co. Inc.*, 537 A.2d 1173, 1175, 312 Md. 45, 49 (1988).

Defendants raise two arguments regarding Plaintiff's claim for wrongful termination.  First, Defendants argue that although Plaintiff has alleged that he was terminated, he was also required to allege the specific effects that the termination had on him.  ECF No. 50-1, at 5.  Second, Defendants allege that Plaintiff has failed to identify a public policy which his termination violated. *Id.* at 5-6.

Plaintiff explicitly alleges in his Second Amended Complaint that Defendants terminated his employment.  ECF No. 27, at ¶ 45.  He need not, as Defendants argue, specifically allege that he was unable to conduct his duties or that he suffered a loss in pay.  Defendants' argument is an impermissible attempt to heighten the standard required of complaints at the motion to dismiss

stage.  The purpose of a complaint is to provide defendants fair notice of a plaintiff's claim. *Twombly*, 550 U.S. at 555.  An allegation that a plaintiff has been terminated – even without any specific allegations that he suffered a loss in pay or was unable to perform specific responsibilities – sufficiently does so at the motion to dismiss stage.  *See Raines v. American Federation of Teachers*, No. ADC-19-1266, 2019 WL 4467132, at *12 (D. Md. Sept. 18, 2019) (finding plaintiff had sufficiently pled a wrongful discharge claim because plaintiff alleged she "was discharged on February 1, 2019.").  Defendants present no authority to the contrary.

Nor must the Court, as Defendants argue, presume that because the period of employment occurred during what is typically the basketball off-season that Plaintiff had no responsibilities. Plaintiff does not plead that his employment as a coach involved no responsibilities during the summer or that he did not work at all during the summer in prior years. To, nonetheless, accept Defendants' argument would require the Court to draw all inferences against the Plaintiff – the precise opposite of what the Court is required to do as this stage of the case.   Although a court need not accept conclusory allegations regarding the *legal effect* of facts stated, *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995), it may not, at the motion to dismiss stage, dispute facts which a plaintiff has explicitly alleged.

Defendants' second argument is likewise unpersuasive.  An employee who asserts that he was wrongfully discharged must "specifically identify the clear mandate of Maryland public policy that was violated by his termination."  *Szaller v. Am. Nat'l Red Cross, et al.*, 293 F.3d 148, 151 (4th Cir. 2002) (citing *Adler*, 291 Md. at 42–44, 432 A.2d at 470–72).  In order for a public policy to support a wrongful discharge action, there "'must be a preexisting, unambiguous, and particularized pronouncement, by constitution, enactment, or prior judicial decision, directing, prohibiting, or protecting the conduct in question so as to make the public policy on the relevant

topic not a matter of conjecture or interpretation.'" *Szaller*, 293 F.3d at 151 (quoting *Porterfield v. Mascari II, Inc.*, 788 A.2d 242, 245, 142 Md. App. 134, 140 (Md. Ct. Spec. App. 2002)). Liability may arise, for example, when an employee refuses "to violate a statutory duty or engage in conduct that violates public policy" or where he or she is terminated "because of the exercise of a legal right[.]" *Parks v. Alpharma, Inc.*, 25 A.3d 200, 210, 421 Md. 59, 77 (2011).  However, it is important to recognize that the "common law is not static; it may be modified by judicial decision when changing circumstances compel courts to 'renovate' outdated law and policy." *See Wholey*, 803 A.2d at 489.

Plaintiff alleges two separate policies implicated by his firing: 1) the implied warranty of good faith, ECF No. 49, at ¶ 54; and 2) the policy in not terminating employees for conduct that is beyond their control, ECF No. 53, at 3.

Maryland recognizes an implied covenant of good faith and fair dealing in contracts.  *Edell & Associates, P.C. v. Law Offices of Peter G. Angelos*, 264 F.3d 424, 444 (4th Cir. 2001).  "[U]nder the covenant of good faith and fair dealing, a party impliedly promises to refrain from doing anything that will have the effect of injuring or frustrating the right of the other party to receive the fruits of the contract between them." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 184 (4th Cir. 2000).  Although under Maryland law, the implied duty does not apply to at-will contracts, it does apply to employment contracts for a definite term.  *See Questar Builders, Inc. v. CB Flooring, LLC*, 978 A.2d 651, 675, 410 Md. 241, 281-82 (2009) (holding that the implied obligation of good faith and fair dealing prevented a party from terminating a contract for any reason or no reason at all when – according to the express terms of the contract – a party could terminate the contract only for convenience); *Manning v. Mercatanti*, 898 F.Supp.2d 850, 861 (D. Md. 2012) ("[A]s parties to a ten year, fixed term employment contract, the [party] w[as] subject

to an implied covenant of good faith and fair dealing."); *Clancy v. King*, 954 A.2d 1092, 1106, 405 Md. 541, 565 (2008) (recognizing the duty of good faith and fair dealing is an implied covenant in employment contracts). Accordingly, Maryland's recognized interest in ensuring that employers act in good faith before firing an individual is a sufficient policy to support a claim for wrongful discharge by an individual who was not an at-will employee.[1] Plaintiff's Second Amended Complaint is silent as to whether he was an at-will employee. Drawing all inferences in his favor, as the Court must at this stage of the case, it would be improper to conclude that he was and dismiss his claim at this stage of the case on that basis.

Plaintiff's alternative argument – that Maryland has recognized a policy against terminating individuals for matters beyond their control – is less persuasive. ECF No. 53, at 3. The Court is unaware of any authority, and Plaintiff has failed to provide any, that this has been recognized as the basis for a wrongful discharge claim. Further, Plaintiff's asserted policy is not akin to the circumstances in which Maryland has recognized a public policy sufficient to support a claim for wrongful discharge – an employee's exercise of a legal right, or an employee's refusal to violate public policy.

Nonetheless, for the reasons described above, Defendants' Motion to Dismiss Count I of the Second Amended Complaint shall be denied.

## II.     Breach of Contract

---

[1] Defendants note in passing that Plaintiff's claim for wrongful termination is "a mere restatement of his contract claim." ECF No. 50-1, at 5. As with several of Defendants' other arguments, Defendants provide no authority in support of their position. To the extent that Defendants intend to argue that because the asserted policy provides a basis for the contract claim, it cannot serve as the basis for a wrongful discharge claim, this Court has rejected that position. "Preclusion [of an abusive discharge claim] . . . applies only when the public policy sought to be vindicated is expressed in a statute which carries its own remedy for vindicating that public policy." *Carson v. Giant Food, Inc.*, 187 F.Supp.2d 462, 482 (D. Md. 2002) (quoting *Insignia Residential Corp. v. Ashton*, 755 A.2d 1080, 1086, 359 Md. 560, 571 (2000)).

To plead a claim for breach of contract, a plaintiff must allege the existence of a contractual obligation, a material breach of that contractual obligation, and resulting damages.  *See Kumar v. Dhanda*, 17 A.3d 744, 749, 198 Md.App. 337, 345 (Md. Ct. Spec. App. 2011).

Although Defendants allege that Plaintiff has failed to identify a term of the contract that was breached, ECF No. 55, at 3, Plaintiff's complaint explicitly alleges that Defendants were explicitly or implicitly required to use good faith when discharging Plaintiff from his position. ECF No. 49, at ¶ 61.  As discussed above, Maryland recognizes a claim for breach of an implied warranty of good faith if the contract is not at-will.

Defendants' other arguments seeking dismissal of Plaintiff's claim for breach of contract also mirror Defendants' arguments seeking dismissal of Plaintiff's wrongful discharge claim.  As with Plaintiff's claim for wrongful discharge, Defendants argue that it was insufficient for Plaintiff to plead that he was terminated; that is, he allegedly was also required to plead a deprivation in duties or a loss in pay.  ECF No. 50-1, at 7.  Again, Defendants provide no authority for this position.  For the same reasons discussed above, this argument is unpersuasive.  This court has found it sufficient, at the motion to dismiss stage, for a plaintiff alleging a breach of contract to assert that he was terminated.  *See Greenbridge Construction, Inc. v. Glasgow Investigative Solutions, Inc.*, No. CCB-20-2070, 2021 WL 1060290, at *3 (D. Md. Mar. 18, 2021) (finding a breach of contract claim sufficiently pled where the plaintiff alleged his "unjustified and improper termination . . . from [the two projects] was wrongful and constituted a material breach" and defendant "took such action . . . without providing any notice to [plaintiff] or affording [plaintiff] any opportunity to address any performance concerns[.]").

Defendants additional arguments are similarly inappropriate at the motion to dismiss stage. Defendants argue that Plaintiff's termination was justified on the basis that he failed to control the

team, as well as his son, resulting in a dangerous situation.  ECF No. 50-1, at 7.  Again, Defendants'
argument improperly asks the Court to draw inferences against the Plaintiff and resolve disputes
of fact at the motion to dismiss stage.  Although the Complaint makes clear that Plaintiff was
present for the event and that an event occurred, it is not clear that Plaintiff was responsible for the
event in question.  Rather, all that is clear is that Plaintiff's son responded inappropriately to
taunting from other individuals present.  At the motion to dismiss stage, I cannot conclude that
merely because Plaintiff was present and that his son was involved, he was responsible.

Defendants also incorrectly argue that Plaintiff was required to plead with specificity the
specific damages he suffered as a result of the breach of contract claim.  ECF No. 50-1, at 7.  The
argument fails for several reasons.  As an initial matter, the argument is merely an attempt to re-
argue the point the Court has already rejected – that it was insufficient for Plaintiff to plead plainly
that he was terminated.  Additionally, the argument is wrong as a matter of law.  Generally, "[a]
complaint need not plead damages with specificity to survive a Rule 12(b)(6) motion to dismiss."
*DCG & T ex rel. Battaglia/Ira v. Knight*, 68 F.Supp.3d 579, 588 (E.D. Va. 2014); *see id.* ("To
survive a 12(b)(6) motion, it is enough for the plaintiff to 'allege[ ] facts that would allow [them]
to recover some damages . . .").  Finally, contrary to Defendants' claims, Plaintiff alleges that
during the same time period when he was terminated, Plaintiff began to see a therapist to manage
the alleged harassment and a chiropractor to treat physical pain due to stress.  ECF No. 49, at ¶ 42-
43.  Viewing the facts in a light favorable to the Plaintiff, the Court can reasonably conclude that
these damages were the result of his allegedly unlawful termination and the surrounding
circumstances.

### III.    Age Discrimination in Employment Act (ADEA) Discrimination

To plead a *prima facie* case of age discrimination, Plaintiff must plead that he: (1) was protected by the Age Discrimination in Employment Act (ADEA), (2) suffered an adverse employment action, (3) was performing his job at a level that met his employer's legitimate expectations at the time of the adverse employment action, and (4) a younger employee was treated more favorably. *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315 (4th Cir. 1993); *see also Duheme v. Columbia CSA-HS Greater Columbia Healthcare System LP*, No. 3:11–2902–JFA, 2014 WL 468942, at *4 n.2 (D.S.C. Feb. 14, 2014) ("The *prima facie* case of ADEA discrimination based on disparate discipline or disciplinary discharge is essentially the same, except that instead of examining persons 'outside the protected class' or 'of another race, color, sex, religion, or national origin,' the *prima facie* case examines persons 'substantially younger' than the plaintiff. (citing *Tolley v. Health Care & Ret. Corp., Inc.*, 133 F.3d 917, 1998 WL 24972, at *2 (4th Cir. Jan. 21, 1998))).

However, a plaintiff does not need to plead a *prima facie* case to defeat a motion to dismiss. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002).  In *McCleary–Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 584-85 (4th Cir. 2015), the Fourth Circuit said:

> In *Swierkiewicz*, the Supreme Court held that "an employment discrimination plaintiff need not plead a prima facie case of discrimination . . . to survive [a] motion to dismiss," 534 U.S. at 515, because "[t]he prima facie case . . . is an evidentiary standard, not a pleading requirement," *id.* at 510, that may require demonstrating more elements than are otherwise required to state a claim for relief, *id.* at 511–12.  The Court stated that requiring a plaintiff to plead a prima facie case would amount to a "heightened pleading standard" that would conflict with Federal Rule of Civil Procedure 8(a)(2).  *Id.* at 512 . . . .  Accordingly, the Court concluded that "the ordinary rules for assessing the sufficiency of a complaint apply," referring to Federal Rule of Civil Procedure 8(a)(2).  *Id.*

Accordingly, a plaintiff must state a claim that "is *plausible* on its face." *Harris v. Housing Authority of Baltimore City*, No. WDQ–14–3395, 2015 WL 5083502, at *9 (D. Md. Aug. 26, 2015) (quoting *McCleary–Evans*, 780 F.3d at 585). A plaintiff is "required to allege facts to satisfy the elements of a cause of action created by that statute." *Id.*; *see also Ciociola* v. *Baltimore City Board of School Commissioners*, No. CCB-15-1451, 2016 WL 125597, at *5 (D. Md. Jan. 12, 2016) (allowing plaintiff's claim to survive a motion to dismiss where he "alleged facts supporting a reasonable inference that he was discriminated against because of his race and age.").

Defendants raise multiple arguments, none of which justify the dismissal of Plaintiff's ADEA claim upon a motion to dismiss. First, as they do in response to Plaintiff's other claims, Defendants argue that he was not, in fact, terminated, because he was rehired before the next basketball season and thus, allegedly suffered no loss in pay or responsibilities.[2] ECF No. 50-1, at 9. Whether Plaintiff suffered a loss in remuneration or was unable to perform his duties are questions of fact that cannot be resolved at the motion to dismiss stage. To conclude, as Defendants ask, that Plaintiff suffered neither, despite the fact that the Complaint is silent as to both, would require the Court to draw inferences against the Plaintiff, contra to the applicable standard at this stage of the case. Defendants' argument also overlooks other important factual questions that cannot be currently resolved, including but not limited to, the manner in which the end of Plaintiff's employment was presented to him and whether Plaintiff suffered any other damages in the interim before he was rehired. As noted above, for example, Plaintiff has alleged that his mental and physical health deteriorated on or around the same time that he was terminated.

---

[2] In arguing that "Plaintiff was in fact not terminated," Defendants proffer unsupported allegations regarding Plaintiff's pay and powers that, even if supported, could not be properly considered on a motion to dismiss. ECF No. 50-1, at 9.

The cases Defendants cite do not undercut this conclusion.  ECF No. 50-1, at 10.  Rather than being cases such as this, in which a plaintiff alleged he was terminated, they were cases in which it was undisputed that the plaintiff was placed on leave, as opposed to terminated.  *See Nagle v. Village of Calumet Park*, 554 F.3d 1106, 1111 (7th Cir. 2009) ("Nagle maintains that after Davis's appointment, he subjected Nagle to age and race discrimination through unwarranted discipline and reassignment to undesirable duties on various occasions.");  *Joseph v. Leavitt*, 465 F.3d 87, 90 (2d Cir. 2006) ("Joseph first argues that he suffered an adverse employment action when he was placed on administrative leave with pay during the pendency of his criminal case and for approximately five months thereafter."); *Singletary v. Missouri Dep't of Corrections*, 423 F.3d 886, 889 (8th Cir. 2005) ("On April 15, Superintendent Taylor suspended Singletary and Black, while still in their probationary employment period, for allegedly conducting unauthorized investigations of the state vehicles assigned to Superintendent Taylor, and Mike Kemna, the Superintendent of a nearby correctional center, the Crossroads Correctional Center (CRCC).");  *Breaux v. City of Garland*, 205 F.3d 150, 154 (5th Cir. 2000) ("Following the various interviews, Internal Affairs investigations, and polygraphs, Breaux was placed on paid administrative leave."). Further, each of these cases came before the respective courts upon either a motion for summary judgment or after a jury trial, where the Court had additional evidence regarding precisely what consequences the plaintiffs suffered as a result of the alleged adverse actions, as opposed to this case in which Defendants ask us to presume, without any evidence in the record, that any adverse consequences Plaintiff may have suffered during the period of unemployment were insufficient as a matter of law.  *Nagle*, 554 F.3d at 1111 (coming before the court upon review of a lower's court grant of summary judgment); *Joseph*, 465 F.3d at 88 (same); *Singletary*, 423 F.3d at 888 (same); *Breaux*, 205 F.3d at 152 (coming before the court for review of a jury verdict).

Defendants' other arguments suffer from the same flaw – they again ask the Court to draw inferences against the Plaintiff at the motion to dismiss stage.  For example, although Defendants concede that Plaintiff alleges that his performance was satisfactory, Defendants argue that the Court should infer that the altercation was Plaintiff's fault.  ECF No. 50-1, at 11.  As explained above, the Complaint is silent as to Plaintiff's role in the altercation; accordingly, to accept Defendants' argument, would require the Court to draw inferences against the Plaintiff at the motion to dismiss stage.  Further, the sole paragraph of the Second Amended Complaint Defendants cite in support of their position is irrelevant to Plaintiff's performance.  *See* ECF No. 55, at 4 (citing ECF No. 49, at ¶ 44 ("On June 17, 2020 a cease and desist letter was received by the Human Resources department for CH Flowers High School sent by and for Plaintiff.")).

Likewise, contrary to Defendants' claims, Plaintiff has presented sufficient information, for the purposes of a motion to dismiss that his dismissal was the result of age discrimination.  Although Defendants argue that Plaintiff "has not alleged a single statement, implication, suggestion or rumor that his termination was age-related," ECF No. 50-1, at 11, Plaintiff specifically alleges that other coaches were also present who were not sanctioned as severely as Plaintiff.  ECF No. 49, at ¶ 20.

Defendants' final argument is similarly meritless at this stage of the case.  We cannot conclude, as Defendants ask, upon a motion to dismiss, that because Plaintiff was re-hired, his initial termination was not motivated by age.  ECF No. 50-1, at 11.  As noted above, Plaintiff has alleged other coaches, who were younger than him and who were also present at the altercation were not punished as severely.  This is sufficient to raise the inference that Plaintiff's termination was based on his age.  To accept Defendants' argument – that because he was rehired, his initial termination was not discriminatory – would require the Court to improperly draw inferences

against the Plaintiff and resolve disputes of fact at the motion to dismiss stage.  That said, Plaintiff's re-hiring is a relevant fact which Defendants may present as evidence, at a later stage of the case, that Plaintiff's firing was not discriminatorily motivated.[3]

## IV.    ADEA Retaliation

An employer also violates the ADEA if they retaliate against an employee for engaging in protected activity.  29 U.S.C. § 623(d).  The elements of a *prima facie* case of retaliation are (1) the plaintiff engaged in a protected activity, (2) the employer took an adverse employment action against the plaintiff, and (3) a causal connection existed between the protected activity and the adverse employment action.  *Williams v. Cerberonics, Inc.,* 871 F.2d 452, 457 (4th Cir. 1989).  As discussed above, a plaintiff does not necessarily need to plead a *prima facie* case to defeat a motion to dismiss.

Defendants raise three separate arguments as to whether Plaintiff has properly pled a claim for retaliation.  First, Defendants argue that Plaintiff was not in fact terminated, in contrast to the explicit allegations in Plaintiff's complaint.  ECF No. 50-1, at 13.  For the reasons explained above, this argument is not persuasive at this stage of the case.

Second, Defendants argue that Plaintiff failed to sufficiently allege that he engaged in protected activity.  "Protected activity", for the purposes of the ADEA

> is typically defined in the context of Title VII.  Courts have recognized substantial similarity between the anti-retaliation provision in Title VII and that in the ADEA, suggesting that the Title VII definition of "protected activity" is informative in the context of the ADEA.  Thus, using the Title VII framework as a guide, a protected activity is one in which the employee opposes an

---

[3] In their Opening Memorandum, Defendants also argued that Plaintiff had not exhausted his administrative remedies.  ECF No. 50-1, at 8.  Putting aside whether such an argument may be properly raised at the motion to dismiss stage, Plaintiff provided proof of exhaustion with his Opposition, ECF No. 53-1, and Defendants did not address the matter in their Reply.

> employment practice on the ground that it violates anti-
> discrimination legislation.

*Royster v. Gahler*, 154 F.Supp.3d 206, 233-34 (D. Md. 2015) (internal citations and quotation

marks omitted), *abrogated on other grounds by Pense v. Maryland Department of Public Safety*

*and Correctional Services*, 926 F.3d 97 (4th Cir. 2019).

To allege a claim of retaliation, a plaintiff must plead that he engaged in protected activity.

*Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998).   Protected

activities fall into two distinct categories: participation or opposition.   *Id.*   "An employer may not

retaliate against an employee for participating in an ongoing investigation or proceeding under

Title VII, nor may the employer take adverse employment action against an employee for opposing

discriminatory practices in the workplace."   *Id.*   Title VII outlines activities that constitute

participation, including: (1) making a charge, (2) testifying, (3) assisting, or (4) participating in

any manner in an investigation, proceeding, or hearing under the statute.   *See* 42 U.S.C.A. § 2000e-

3(a).   While the Act does not specifically define what constitutes oppositional practices, "[w]hen

an employee communicates to her employer a belief that the employer has engaged in . . . a form

of employment discrimination, that communication virtually always constitutes the employee's

*opposition* to that activity."   *Crawford v. Metro. Gov't of Nashville & Davidson Cty.*, 555 U.S.

271, 276 (2009) (internal quotation marks omitted).   The Fourth Circuit "has articulated an

expansive view of what constitutes oppositional conduct, recognizing that it 'encompasses

utilizing informal grievance procedures as well as staging informal protests and voicing one's

opinions in order to bring attention to an employer's discriminatory activities.'"   *DeMasters v.*

*Carilion Clinic*, 796 F.3d 409, 417 (4th Cir. 2015) (citing, 149 F.3d at 259).   Opposition can

include both formal and informal grievance procedures.   *Laughlin*, 149 F.3d at 259.   A grievance

need not manifest into a successful suit for discrimination to serve as the basis of a retaliation claim. *Boyer-Liberto v. Fontainebleu Corp.*, 786 F.3d 264, 282 (4th Cir. 2015).

"To qualify as a protected activity, the employment practices opposed must be either 'actually unlawful under Title VII' or reasonably believed by the employee to be lawful." *Booth v. County Executive*, 186 F.Supp.3d 479, 487 (D. Md. 2016) (citing *Boyer-Liberto*, 786 F.3d at 282); *see also Netter v. Barnes*, 908 F.3d 932, 937 (4th Cir. 2018) ("[f]or an employee's activity to constitute protected 'opposition,' she must show . . . that she reasonably believed that the employment action she opposed constituted a Title VII violation."); *Connelly v. Maryland Dept. of Human Serv.*, No. JKB-21-1068, 2021 WL 6000076, at *7 (D. Md. Dec. 20, 2021) (holding Connelly failed to state claim for retaliation because he failed to allege retaliation for opposition to any practice unlawful under Title VII. In making this determination, a court may look both to the plaintiff's subjective beliefs, as well as the reasonableness of those beliefs. *Greene v. A. Duie Pyle, Inc.*, 371 F.Supp.2d 759, 764 (D. Md. 2005) ("[T]his court must determine whether [plaintiff] subjectively (in good faith) believed that [defendant] was violating Title VII and whether [plaintiff]'s subjective belief was objectively reasonable in light of the facts.").

Applying these standards, although Plaintiff's verbal complaint was not sufficient to constitute protected activity, his cease and desist letter may be. As explained above, to constitute protected activity, the complaint must be made or communicated to the employer. According to the Second Amended Complaint, Plaintiff's verbal complaint was to the Union. There are no allegations in the Complaint that would support an inference that his expression of concern to the Union was ever communicated to Defendants or that Defendants were otherwise aware of it. Although Plaintiff, in his Opposition, argues that Defendants had constructive knowledge of his

complaint to the Union, he identifies no allegations in the Second Amended Complaint supporting such a conclusion or inference.  ECF No. 53, at 5.

However, Plaintiff's cease and desist letter, as alleged, is sufficient to constitute protected activity for the purposes of a motion to dismiss.  In arguing that Plaintiff failed to provide any information regarding the contents of the letter, ECF No. 50-1, at 12-13, Defendants erroneously read the paragraphs of the Seconded Amended Complaint in isolation; together, they support the inference that the cease and desist letter complained of employment practices prohibited by the ADEA.  As Plaintiff describes, after the altercation, Defendants initiated a campaign of "severe and pervasive" harassment.  This included increased discipline for his son, increased monitoring of his classes, an adjusted review structure, and a suspension.  Plaintiff alleges that other coaches who were also present for the altercation, but were younger, were not subjected to similar measures.  After the conclusion of the semester when such actions were taken, Plaintiff alleges that he sent a cease and desist letter to the human resources department.  Reading these paragraphs together, and drawing all inferences in Plaintiff's favor, I can reasonably infer that the cease and desist letter related to the harassing incidents on the basis of his age.

Finally, Defendants' argument that Plaintiff has failed to sufficiently allege that the cease and desist letter caused Plaintiff's termination is similarly ill-founded.  ECF No. 50-1, at 13. Although Defendants may have threatened action against Plaintiff several months prior to him sending the cease and desist letter, according to the Second Amended Complaint, they ultimately did not take such action until after he sent the letter.  ECF No. 49, at ¶ 44-46.  Further, the close proximity in time of the letter to Plaintiff's alleged termination – nine days – strongly supports an inference that the letter may have been causally related to his termination.  *Id*.  Ultimately, whether the letter was the motivating factor, or whether Defendants had predetermined to fire Plaintiff

several months before, and then let him remain working for several months thereafter, is a question of fact inappropriate to resolve at the motion to dismiss stage.  Nor does the fact that Plaintiff conceded that he received a poor performance review undercut causation.  According to the Second Amended Complaint, Plaintiff received the poor review seven days after he sent the cease and desist letter, and two days before he was terminated.  ECF No. 49, at ¶ 44-45.  Accordingly, the Second Amended Complaint can be plausibly read as alleging that the poor performance review was part of the alleged harassment that culminated in his termination.  For the time being, Plaintiff has sufficiently alleged facts which support an inference that his letter complaining of harassment based on his age led to Defendants' decision to terminate his employment.

## V.      Intentional Infliction of Emotional Distress

Four elements are required to establish a cause of action for intentional infliction of emotional distress (IIED): (i) the conduct must be intentional or reckless; (ii) the conduct must be extreme or outrageous; (iii) there must be a causal connection between the wrongful conduct and the emotional distress; and (iv) the emotional distress must be severe.  *Brengle v. Greenbelt Homes, Inc.*, 804 F.Supp.2d 447, 452 (D. Md. 2011) (quoting *Harris v. Jones*, 380 A.2d 611, 614, 281 Md. 560, 566 (1977)).  When attempting to make such a showing, plaintiffs need to plead with specificity, as reciting "in conclusory form the bare elements of an intentional infliction of emotional distress claim" will not do.  *Vance v. CHF Intern.*, 914 F.Supp.2d 669, 683 (D. Md. 2012).

Plaintiff alleges Defendants intentionally took several actions which together caused him severe emotional distress.  Plaintiff alleges that Dr. Brown publicly yelled that Plaintiff's employment would be terminated; that Defendants reported Plaintiff's son to police officials; that Defendants routinely monitored Plaintiff's classroom; and that Defendants suspended Plaintiff,

while punishing other coaches present less severely.[4]  ECF No. 49, at ¶ 83.  As a result, Plaintiff alleges that he suffered emotional distress – specifically, he developed diabetes and had to seek therapy.  *Id.* at ¶ 87-88.

Although Defendants challenge whether Plaintiff has sufficiently pled each of the elements of IIED, ECF No. 50-1, at 14-16, I need not address each of their arguments, as Plaintiff has failed to sufficiently allege that he suffered extreme emotional distress.   To successfully plead a claim for IIED, a plaintiff must state with reasonable certainty the nature, intensity, or duration of the emotional injury he suffered as a result of Defendants' actions.  *Manikhi v. Mass Transit Admin.*, 758 A.2d 95, 115, 360 Md. 333, 370 (2000).  Plaintiff alleges two separate emotional injuries, however his diabetes diagnosis in 2018 predated Defendants' alleged conduct by approximately two years.  Accordingly, it cannot support the alleged IIED claim.  This leaves only Plaintiff's general allegation that he was forced to seek therapy, which is insufficient by itself to support an IIED claim.

Accordingly, Plaintiff's claim for intentional infliction of emotional distress shall be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Counts I through IV of Plaintiff's Second Amended Complaint shall be DENIED, while Defendants' Motion to Dismiss Count V shall be GRANTED.

---

[4] Plaintiff also alleges, in support of his count of intentional infliction of emotional distress, that other students were not reported to criminal authorities; that Defendants would "usurp" Plaintiff's classroom; that Mr. Adams told Plaintiff that he was working under a spotlight; that Mr. Adams would berate Plaintiff in front of other staff members; and that Defendants told Plaintiff to "watch his back".  ECF No. 49, at ¶ 83.  None of these allegations appear in the facts portion of the Complaint.  Accordingly, even drawing all inferences in Plaintiff's favor, these allegations have no factual basis.

So ordered.

_____/s/_____

Date: December 27, 2022                                    Ajmel A. Quereshi
                                                          U.S. Magistrate Judge